UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                              Chapter 7
GORDOS RESTAURANT CORP.,                            Case No. 18-23862 (RDD)

                        Debtor.
-------------------------------------------------------------x
MARK S. TULIS, as Chapter 7 Trustee of
Gordos Restaurant Corp.,

                        Plaintiff,                  Adv. Pro. No. 19-08721 (RDD)

        -against-

GORDOS NORTH RESTAURANT CORP.,
MICHAEL J. SCHLIMAN,
ELIZABETH SCHLIMAN and
JOANNE PIAZZA,

                        Defendants.
-------------------------------------------------------------x

## CHAPTER 7 TRUSTEE'S POST-TRIAL BRIEF

LaMonica Herbst &Maniscalco, llp
*Attorneys for Mark S. Tulis, the Chapter 7 Trustee*
*of Gordos Restaurant Corp.*
David A. Blansky, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Tel. (516) 826-6500

## Table of Contents

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION........................................................................................................... 1

THE TRIAL .................................................................................................................... 2

MATERIAL FACTS ....................................................................................................... 4

JURISDICTION ............................................................................................................. 7

   ARGUMENT ................................................................................................................ 8

     I.    Gordos North Has Violated Section 43(a) of the Lanham Act.................................. 8

     II.    Gordos North Has Violated Section 43(c) of the Lanham Act ............................. 12

     III.    Gordos North Has Violated New York General Business Law Section 360-1 .... 13

     IV.    Gordos North Has Violated New York Common Law ........................................ 14

     V.    Gordos North Has Received a Post-Petition Transfer of Property of the Estate Avoidable under Section 549 of the Bankruptcy Code...................................................... 15

     VI.    Michael Schliman Is Liable for Breach of His Fiduciary Duty, Duty of Loyalty and Waste ................................................................................................................................ 15

     VII.    Injunctive Relief ................................................................................................. 18

     VIII.    Assessing Money Damages against the Defendants ......................................... 19

CONCLUSION ............................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,
    42 N.Y.2d 538 (1997) ........................................................... 14

Alpert v. 28 Williams St. Corp.,
    63 N.Y.2d 557, 483 N.Y.S.2d 667 (1984) .............................. 15

Aronoff v Albanese,
    85 A.D.2d 3, 446 N.Y.S.2d 368 (2d Dept 1982) ................... 17

Arrow Fastener Co. v. Stanley Works,
    59 F.3d 384 (2dCir.1995) ................................................. 9, 10

Auerbach v. Bennett,
    419 N.Y.S.2d 619, 393 N.E.2d 994, 419 N.Y.S.2d 920 (1979 ........................................ 16-17

Banjo Buddies, Inc. v. Renosky,
    399 F.3d 168 (3d Cir. 2005) ................................................. 20

Birnbaum v. Birnbaum,
    73 N.Y.2d 461 (1989) ........................................................... 17

Brennan's, Inc. v. Brennan's Rest., L.L.C.,
    360 F.3d 125 (2d Cir. 2004) ................................................. 18

Deere & Co. v. MTD Prods., Inc.,
    41 F.3d 39 (2d Cir. 1994) ..................................................... 13

Djarum v. Dhanraj Imports, Inc.,
    876 F. Supp. 2d 664 (W.D.N.C. 2012) ................................. 19

Earthquake Sound Corp. v. Bumper Indus.,
    352 F.3d 1210 (9th Cir. 2003) .............................................. 22

Fendi Adele, S.R.L. v. Ashely Reed Trading, Inc.,
    507 Fed. Appx. 26 (2d Cir. 2013) .................................... 19, 24

Fishman Transducers, Inc. v. Paul,
    684 F.3d 187–92 (1st Cir. 2012) .......................................... 19

Geddes v. Anaconda Copper Co.,
    254 U.S. 590, 41 S. Ct. 209, 65 L. Ed. 425 (1921) ............... 16

Gillman v Pebble Cove Home Owners Assn.,
    154 A.D.2d 508 .................................................................... 17

GTFM, Inc. v. Solid Clothing Inc.,
    215 F. Supp. 2d 273 (S.D.N.Y. 2002) .................................. 14

Hanson Trust PLC v. ML SCM Acquisition, Inc.,
   781 F.2d 264 (2d Cir. 1986) ................................................. 16

Horn's, Inc. v. Sanofi Beaute, Inc.,
   963 F. Supp. 318 (S.D.N.Y. 1997) ........................................ 14

Island Software & Computer Serv., Inc. v. Microsoft Corp.,
   413 F.3d 257 (2d Cir. 2005) ................................................. 24

Kamar Int'l, Inc. v. Russ Berrie & Co., Inc.,
   752 F.2d 1326–33 (9th Cir. 1984) ................................... 21, 22

Kelly-Brown v. Winfrey,
   717 F.3d 295 (2d Cir. 2013) ................................................... 9

Lewis v. S.L. & E., Inc.,
   629 F.2d 764 (2d Cir. 1980) ................................................. 16

Maltina Corp. v. Cawy Bottling Co., Inc.,
   613 F.2d 582 (5th Cir. 1980) ............................................... 21

Matter of Levandusky v One Fifth Ave. Apt. Corp.,
   75 N.Y.2d 530, 553 N.E.2d 1317 (1990) .............................. 17

Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.,
   880 F. Supp. 1005 (S.D.N.Y. 1994) ..................................... 23

Moseley v. V. Secret Catalog, Inc.,
   537 U.S. 418, 123 S.Ct. 1115 (2003) .............................. 12-13

N.A.S. Import, Corp. v. Chenson Enter., Inc.,
   968 F.2d 250 (2d Cir. 1992) ................................................. 24

Nabisco, Inc. v. PF Brands, Inc.,
   191 F.3d 208 (2d Cir. 1999) ................................................. 13

Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc., No. 08-cv-68,
   2010 WL 2133937 (E.D.N.Y. Mar. 11, 2010) ....................... 24

Polaroid Corp. v. Polarad Electronics Corp.,
   287 F.2d 492 (2d Cir. 1961) ................................................... 8

POM Wonderful LLC v. Coca-Cola Co.,
   134 S. Ct. 2228 (2014) ........................................................... 8

Rexall Sundown, Inc. v. Perrigo Co.,
   707 F. Supp. 2d 357 (E.D.N.Y. 2010) .......................... 19-20, 24

Romag Fasteners, Inc. v. Fossil, Inc.,
   590 U.S. __, 140 S. Ct. 1492, 206 L.Ed.2d 672 (2020) ....... 19

Shapiro v. Rockville Country Club, Inc.,
   2005 NY Slip Op 7678 (2d Dept 2005) .................................................. 17

Simpson v Berkley Owner's Corp.,
   213 A.D.2d 207, 623 N.Y.S.2d 583 (1st Dept 1995) ........................... 17

Sirianni v Rafaloff,
   284 A.D.2d 447, 727 N.Y.S.2d 452 (2d Dept 2001) ............................ 17

Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,
   588 F.3d 97 (2d Cir. 2009) .......................................................... 9, 14

Tamko Roofing Products, Inc. v. Ideal Roofing Co.,
   282 F.3d 23 (1st Cir. 2002) ............................................................. 23

U.S. Media Corp., Inc. v. Edde Entm't, Inc., No. 94-cv-4849,
   1996 WL 520901 (S.D.N.Y. Sept. 12, 1996) ........................................ 24

U.S.S.E.C. v. Citigroup Glob. Markets, Inc.,
   752 F.3d 285 (2d Cir. 2014) ............................................................. 18

United Phosphorus Ltd. v. Midland Fumigant, Inc.,
   205 F.3d 1219 (10th Cir. 2000) ........................................................ 23

Wellness Int'l Network, Ltd. v. Sharif,
   575 U.S. 665, 135 S. Ct. 1932 (2015) ................................................... 7

WMS Gaming Inc. v. WPC Prods. Ltd.,
   542 F.3d 601 (7th Cir. 2008) ............................................................ 20

**Statutes**

11 U.S.C. § 549 ................................................................................. 2, 6, 15
15 U.S.C. § 1116 ....................................................................................... 18
15 U.S.C. § 1117 ................................................................... 19, 22, 23, 24
15 U.S.C. § 1125 ................................................................................... 8, 23
28 U.S.C. § 1920 ....................................................................................... 23
N.Y. B.C.L. § 717 ................................................................................ 16, 17
N.Y. Gen. Bus. Law § 360-l ............................................................... 13-14
N.Y. Gen. Bus. Law § 360-o ................................................................... 14

**Rules**

Bankruptcy Rule 7008 ............................................................................... 7
Bankruptcy Rule 7012 ............................................................................... 7

## INTRODUCTION

In accordance with the Court's direction at the conclusion of the trial conducted on March 3, 2022, Mark S. Tulis, as Chapter 7 Trustee (the "Trustee" or "Plaintiff") of the estate of Gordos Restaurant Corp. (the "Debtor") hereby submits his post-trial brief, guided significantly by the Court's preliminary rulings[1].

As observed by the Court at the conclusion of the trial, it is clear that the name Gordos, long associated with the Debtor in its particular locality, had real value and "was properly protected and protectable, and Gordos North Restaurant Corp. ("Gordos North") took advantage of that to get a meaningful head start on its restaurant business."  Trial Transcript, p. 105.

Defendants' explanation for the selection of the name Gordos North for a restaurant situated less than two miles north of the Debtor's former operations was not credible and was properly rejected by the Court.  Id.

The record at the trial evidences that the Gordos name had been used locally in commerce for decades and that the Defendants took steps to misappropriate the Gordos name and the goodwill associated with it as soon as it become apparent that the Debtor could not reorganize.  The facts reflect that Gordos North intended to hit the ground running by creating the public perception that Gordos North was Gordos reincarnated.  Rather than attempt to acquire the Gordos mark and the associated goodwill from the bankruptcy estate, immediately after the Debtor ceased operating and moved to dismiss its case, Gordos North was formed for the purpose of reopening nearby and trading on Gordo's longstanding reputation in the community.

---

[1]    The Trustee's failure to address any of his claims for relief or to discuss any particular Defendant's liability should not be construed as an abandonment or waiver of such claims.

1

That strategy enabled the Defendants to take an asset of the Debtor that had value to the estate and its creditors, particularly the namesake of Gordos – Gordon Krueger – and hit the ground running once it opened its doors.

There can be no doubt that Gordos North engaged in trademark infringement by its use of the Gordos mark under both the Lanham Act and New York state law and that such use also violated Section 549 of the Bankruptcy Code and that such use warrants both injunctive relief and an award of significant money damages to the estate.

Moreover, there can be little dispute that the Defendant Michael Schliman ("Michael") has breached his fiduciary duty as the sole officer and shareholder of the Debtor and engaged in corporate waste and self-dealing such that he should be personally liable in an amount equal to the damages assessed against Gordos North.

## THE TRIAL

This matter was tried before the Court on March 3, 2022. The trial record is comprised of the Trial Declaration of Gordon Krueger (the "Krueger Declaration") and the live cross-examination and redirect of Mr. Krueger, the live testimony of Defendants Michael and Elizabeth ("Elizabeth") Schliman, and the live testimony of non-party witness John Piazza ("John"), husband of Defendant Joanne Piazza ("Joanne")[2].

The record of the trial also included a joint exhibit book comprised of Plaintiff's Exhibits "A" through "T", Defendants' Exhibits "1" through "10", and one demonstrative exhibit, Plaintiffs' Exhibit "U".

---

[2] Joanne did not appear at or participate in the trial.

Plaintiffs' Exhibits included excerpts of the deposition testimony of Defendants Elizabeth, Michael, and Joanne, Elizabeth and Joanne appearing both individually and on behalf of Gordos North.  See Plaintiffs Exhibits "R" through "T", respectively.

Those excerpts constitute statements of a party opponent and evidence Defendants' collective knowledge of the Debtor's operations and long-standing use of the Gordos mark.

The Krueger Declaration was admitted without any objection as to its contents. Trial Transcript, pp. 17-18.  Mr. Krueger, the namesake of Gordos, detailed the origin of the Gordos mark, the history of its use, and its notoriety in the local community arising from its use in commerce for nearly 40 years.

The Court has had the opportunity to assess the credibility of each of the witnesses appearing before it and has found Defendants' explanation as to the origin of the Gordos North name being predicated on an inside "fat" joke to be "among the least credible [it has] heard in a long time".  Trial Transcript, p. 105.

Moreover, it observed that since John or his business exclusively provided the funds for or handled the buildout of Gordos North restaurant and that Elizabeth contributed no funds that the primary value Elizabeth brought to the business was the Gordos mark, the goodwill associated with it, and the communal recognition of the relationship between the Schlimans and Gordos for over ten years before the Debtor closed its doors.  Trial Transcript, p. 109.

Gordos North benefitted materially from its appropriated of the Gordos mark.  The Trustee should be awarded money damages for what Gordos North diverted from the estate.

## MATERIAL FACTS

In October 2006, Michael Schliman and his partner obtained the stock to the Debtor.  See Plaintiff's Exhibits "A" and "B".  The share purchase agreement executed in connection with that transaction expressly stated that the sale of the Debtor "shall also include the use of the trade name "Gordo's"" and the good will associated with the Debtor.  See Plaintiff's Exhibit "B", p. 2.

On December 15, 2018, the Debtor filed for Chapter 11 relief to forestall landlord executed on warrant of eviction.  On December 28, 2018, the landlord filed a motion for relief from stay to enforce the warrant of eviction, which was opposed by the Debtor on January 9, 2019.

At the hearing on the stay relief motion held on January 11, 2019, the Debtor and landlord reached an agreement placed on the record providing for terms of a peaceful surrender on February 11, 2019.

On February 12, 2019, the Debtor surrendered the premises to the landlord, after operating there using the Gordo's name for nearly 40 years.  See Krueger Declaration, para "2".

Shortly thereafter, on February 20, 2019, the Debtor files a motion to dismiss its case.  See Plaintiff's Exhibit "C".

Gordos North was incorporated the following day, on February 21, 2019.  See Plaintiff's Exhibit "E".

Michael was examined at the hearing on the motion to dismiss held on March 22, 2019, at which time the Court concluded that good cause existed to convert the case to one under Chapter 7 rather than to dismiss it. The conversion order was entered on March 28, 2019. See Plaintiff's Exhibit "D".

Michael testified at trial that the Debtor was under in control during the post-petition period from to the conversion.  Trial Transcript, p. 55:5-55:16.

4

On April 1, 2019, Gordos North entered into a lease, which was guaranteed by its shareholders, Elizabeth and Joanne.  See Defendants' Exhibit "10", item 7 to letter.

On April 4, 2019, Bruno Gioffre, Esq., sent a letter to the Town of Mt. Pleasant Clerk of to report Gordo North's intent to seek an on-premise liquor license and requested a temporary retail permit. Defendants' Exhibit "10", item 4 to letter.

On July 10, 2019, Bruno Gioffre, Esq., submitted an application for liquor licenses to the New York State Liquor Authority.  See Plaintiff's Exhibits "F" and Defendants' Exhibit "10",

Gordos North opened its doors on September 16, 2016.  See Plaintiff's Exhibit "R", p. 40:14-40:16.

John Piazza testifies for the Defendants as a non-party that either he or his construction company were the source of the funds and or labor to build out Gordos North's space and to capitalize its startup costs.  Trial Transcript, pp. 62:4-62:6, 63:7-63:16, 66:10-66:23, and 72:13-72:16.

Elizabeth also testified at trial that john provided the funds for the build out, equipment, initial goods, and to pay employees.  Trial Transcript, p. 31:9-31:20.

John testified that no construct contract was prepared between his construction company, Piazza Inc.[3], and Gordos North.  Trial Transcript, pp. 72:21-73:3.

John also testified that no promissory notes were prepared with respect to any of the funds advanced by him to or for the benefit of Gordos North, that no interest rate or maturity date had been agreed upon, and that he did not obtain a security agreement in connection with the funds provided by him or his company.  Trial Transcript, pp.74:14-75:2.

---

[3] The invoices and documents included in Defendants' Exhibit "1" alternatively reference Piazza, Inc. and Piazza Brothers, Inc.  While Piazza Brothers, Inc. is a domestic corporation registered with the New York State Department of State, there is no Piazza Inc. registered with the New York State Department of State.

John testifies that he expected he would be paid back whenever Gordos North could afford to do so. Trial Transcript, p. 73:7-73:25.

As reflected in its operating reports, between September 1, 2019 and January 31, 2022 Gordo's North had gross sales of $2,291,341.77 and sales (net of tax collected and comps) of $2,057,151.75. See Plaintiff Exhibits "J" and "U".

Gordos North continued to operate between February 1, 2022 and the trial date.

According to statements to the Gordos North federal tax returns for the tax year ended September 30, 2021, as of October 1, 2020 Gordos North had a loan payable to Piazza Brothers in the sum of $422,055. See Defendants' Exhibit "8" (providing detail to Schedule L, Line 20 of the federal tax return for the period ended September 30, 2021).

As of September 30, 2021, the loan payable due Piazza Brothers had been paid down by $400,000 and has a remaining balance of $22,055. Id.

John acknowledged repayment during the tax year ended September 30, 2021 of several hundred thousand dollars at trial. Trial Transcript, p. 75:6-75:21.

Each of the answers filed by the Defendants asserted that the Complaint failed to state a claim upon which relief could be granted and generally asserted all defenses available at law.

Gordos North additionally asserted defenses based on:

(a) purported distinctions in proving actual consumer confusion under a Lanham Act Section 43(a) claim and the injunctive relief warranted where only a likelihood of confusion among customers is demonstrated;
(b) Gordo's not being a valid, live and/or registerable mark; and
(c) The Trustee not being the rightful owner or assignee of the Gordo's mark.

Joanne and the Schlimans additionally claimed that the acts described in the Complaint did not violation the Lanham Act and that their actions were neither willful nor intentional.

## JURISDICTION

The Court's scheduling and pre-trial order entered on April 12, 2021 required, among other things, that those who had not filed statements under Bankruptcy Rule 7008 concerning the Court's jurisdiction to enter final orders should do so by April 16, 2021.  Dkt No. 28.

That order was served on counsel for the represented parties and the pro se parties, namely Elizabeth and Michael, via first class mail and e-mail on April 14, 2021.

Both the Trustee and Joanne had earlier filed their Bankruptcy Rule 7008 statements in which they stated that each consented to the Court's jurisdiction to enter final orders in this matter.

Neither Gordos North nor the Schlimans filed Bankruptcy Rule 7008 statements contesting the jurisdiction of this Court to enter final orders.  While they did not expressly consent, their consent is implied. "[T]he key inquiry is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case' before the non-Article III adjudicator." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1948 (2015) (quoting *Roell v. Withrow,* 538 U.S. 580, 590 (2003)).

Gordos North and the Schlimans were aware of their rights to consent or withhold consent. Rule 7012(b) of the Federal Rules of Bankruptcy Procedure requires the responding pleader to state whether it does or does not consent to the entry of a final judgment by the bankruptcy judge.

Although forewarned by Rule 7012(b) and the Trustee's Complaint regarding the need to allege consent or the withholding of consent, the answers filed by Gordos North and the Schlimans (who were then represented by counsel), merely admit that this is a core proceeding and otherwise stated the jurisdictional grounds stated by the Trustee are legal conclusions that are neither admitted or denied, thereby ignoring the mandate of Bankruptcy Rule 7012(b).

Finally, at trial neither Gordos North nor the Schlimans disputed this Court's authority to enter final orders, such that they must be deemed to have consented to the jurisdiction of the Court to enter final judgment in this adversary proceeding.

## ARGUMENT

### I.  Gordos North Has Violated Section 43(a) of the Lanham Act

The Lanham Act "protect[s] persons engaged in . . . commerce against unfair competition." *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2233 (2014) (citation omitted). Under 15 U.S.C. § 1125(a)(1):

> Any person who, on or in connection with any goods or services, . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

> Accordingly, Section 43(a) of the Lanham Act provides two general theories of liability:

> (1) false representations regarding the origin, endorsement or association of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ("false endorsement" or "false association"), and

> (2) false representations in advertising concerning the quality of services or goods ("false advertising").

To prevail under Section 43(a) of the Lanham Act, a plaintiff must show that it has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers.

In *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.) ("*Polaroid*"), cert. denied, 368 U.S. 820 (1961), the Second Court identified the following eight criteria for determining whether there was a likelihood of consumer confusion:

(1) the strength of the plaintiff's mark;
(2) the similarity of plaintiff's and defendant's marks;
(3) the competitive proximity of the products;
(4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's;
(5) actual confusion between products;
(6) good faith on the defendant's part;
(7) the quality of defendant's product; and
(8) the sophistication of buyers.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009)."The application of the Polaroid test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Starbucks Corp.*, 588 F.3d at 115). As we stated in *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384 (2dCir.1995), the Polaroid factors are not, of course, "exclusive" and should not be applied "mechanically." No single factor is dispositive, and cases may certainly arise where a factor is irrelevant to the facts at hand. But it is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why. Id. at 400 (citations omitted) (quoting *Paddington Corp. v. AttikiImps. & Distribs.*,4 Inc., 996 F.2d 577, 584 (2d Cir. 1993)).

The trial record reflects that the Debtor held a valid, protectible mark that was used for decades in commerce, that Gordo North's use of the mark not only resulted in the likelihood of confusion, but caused actual confusion among consumers, and that Gordos North's conduct was deliberate.

The Gordos mark was a strong mark in the geographic area where the Debtor operating for nearly 40 years, including a period during which Michael was an employee of and, later, the owner of the Debtor.  At his deposition, Michael testified as to his longtime affiliation with the Debtor and his knowledge of its existence since 1980.  <u>See</u> Plaintiff's Exhibit "M". pp. 10:4-12:17.  He

also knew that the Gordos mark was associated with one of the former owners, Mr. Kreuger.  Id.

Elizabeth was also employed by the Debtor during the period that her husband owned the restaurant.  Plaintiff's Exhibit "L", pp. 18:19-20:7.    She was also aware that it was a fixture in the community.  Trial Transcript, p. 36:2-36:9; Plaintiff's Exhibit "L", p. 18:5-10.  To induce the New York State Liquor Authority to license Gordos North, she represented in her personal questionnaire that she has been a managed at the Debtor.  See Plaintiff's Exhibit "I".

Both the Debtor and Gordos North prominently featured "Gordos" in their marks, the primary distinction being that Gordos North added a directional reference to its location being north of the former location.  Gordos North opened less than two miles and no more than a five-minute drive from the Debtor's former premises, placing it in the immediate proximity of the Debtor's former operations.

Both restaurants featured similar cuisine and some Gordos North offered some of the Debtor's signature dishes on its menu.  See Krueger Declaration and compare Plaintiff's Exhibits "G" and "H".

Social media posts by Gordos North and its customers, online news articles featuring interviews with the individual Defendants, and Yelp reviews by customers reflect that patrons were actually confused by Gordos North's use of the Gordos mark and perceived it to be a reopening of the Debtor's restaurant at a new location.  See Plaintiffs Exhibits "L" through "Q".

The Defendants made no secret about their intentions.  In an article title, "Last Call for Longtime Hawthorne Tavern Marks End to an Era", published on theexaminenernews.com website just before the Debtor ceased operating, Michael was quoted as saying "resurrecting the business is not out of the questions" and that he would be looking for new locations, "preferably in the Mount Pleasant and Pleasantville area, so it would be easy for many of the regulars to

return." See Plaintiff's Exhibit "L". That is exactly what they did.

Most tellingly, Gordos North posted a link to Westchester Magazine article titled, "This Favorite Hawthorne Restaurant Just Reopened With a Fresh Look in Thornwood" on December 9, 2019, thereby reinforcing the public perception that Gordos North was the reincarnated Gordo's Restaurant. See Plaintiff's Exhibit "O".

The Defendants were not acting in good faith given that the Schlimans had been closely affiliated with the Debtor for a number of years. Michael had bartended at the Debtor prior to purchasing the business and Elizabeth worked at the Debtor throughout the period in which her husband owned it and reported her position to be manager of the Debtor in her questionnaire support Gordos North's application to the New York State Liquor Authority. See Plaintiff's Exhibit "I".

Each of the Defendants and John were aware that Gordos had been a fixture in the community for over a generation and they determined to capitalize on the good will associated with its name by incorporating the name into their new enterprise less than 1.5 miles north of the original location.

The chronology of events reflects that the Defendants undertook a willful, deliberate and determined campaign to appropriate the Gordos mark and the good will associated with it without having to purchase those assets from the estate.

Under the totality of the circumstances, it is no surprise the customers were actually confused and caused to believe that Gordos North was Gordo's restaurant reincarnated.

Taken together, the Trustee has demonstrated sufficient *Polaroid* factors to warrant not only a likelihood of confusion, but actual confusion by customers, such that the Trustee is entitled to relief on his first claim for relief against Gordos North.

## II.      Gordos North Has Violated Section 43(c) of the Lanham Act

A trademark dilution claim focuses on the "whittling away" of the "uniqueness" of a trademark and the resulting loss of economic power caused by other uses of that mark, regardless of whether such use is likely to cause confusion.

Lanham Act § 43(c)(1) provides the following elements for a prima-facia case that a plaintiff must plead and prove to establish trademark dilution under the act:

> 1. The plaintiff is the owner of a mark which qualifies as a "[distinctive and] famous" mark as measured by the totality of the eight factors listed in § 43(c)(1),
> 2. The defendant is making commercial use,
> 3. In interstate commerce,
> 4. Of a mark or trade name,
> 5. And defendant's use began after the plaintiff's mark became famous,
> 6. And defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services.

*See* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 24:89 (1999).

Section 43(c)(1)(A)-(H) of the Lanham Act provides a non-exhaustive list of eight factors courts may weigh in determining whether a mark is "distinctive and famous:"

> (A) the degree of inherent or acquired distinctiveness of the mark;
> (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
> (C) the duration and extent of advertising and publicity of the mark;
> (D) the geographical extent of the trading area in which the mark is used;
> (E) the channels of trade for the goods or services with which the mark is used;
> (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
> (G) the nature and extent of use of the same or similar marks by third parties; and
> (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

"[A]t least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior users mark with a famous mark is not sufficient to establish actionable dilution," and thus either direct evidence of dilution or circumstantial evidence must be provided. *Moseley v. V. Secret Catalog, Inc*., 537 U.S. 418, 123 S.Ct. 1115 (2003).

Dilution is defined in the statute as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of competition between the owner of the famous mark and other parties, or the likelihood of confusion, mistake or deception. *Mosley¸* 123 S.Ct. at 118.

The Second Circuit has concluded, in a case involving "Goldfish" crackers, that there could be dilution without proof of actual harm where there is similarity in the marks and the uses are in close proximity. *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208 (2d Cir. 1999).

Here, although the Debtor was no longer operating during the period of time in which Gordos North was utilizing the Gordos mark, there is no doubt as to the similarity of the marks and that Gordos North used the Gordos mark and good will in close proximity to its long-time location less than five minutes away.

Both marks were used to market the same services and a small geographic area to a common customer base that had built-in recognition of the Gordos name.

Consequently, Gordos North should be found liable to the Trustee on his second claim for relief under Section 43(c)(1) of the Lanham Act.

### III.    Gordos North Has Violated New York General Business Law Section 360-1

New York has an anti-dilution statute, codified in Section 360-l of Article 24 of the General Business Law.

The Second Circuit has held that to prevail in an action under New York's anti-dilution law, a trademark owner must show:

(a) That its mark has a distinctive quality or secondary meaning capable of dilution; and
(b) A likelihood of dilution.

*Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42 (2d Cir. 1994).

The Second Circuit has held that fame is not required for a mark to be protected under the

New York anti-dilution law. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009).

The New York Court of Appeals held that the statute protects strong marks, meaning marks that either:

(a) Possess a distinctive quality; and
(b) Have acquired a secondary meaning capable of dilution.

*Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 545 (1997).

On the same grounds stated Section II, Gordos North is also liable to Plaintiff for dilution under N.Y. Gen. Bus. Law § 360-l on his fourth claim for relief.

## IV.    Gordos North Has Violated New York Common Law

New York recognizes a cause of action for common law trademark infringement (N.Y. Gen. Bus. Law § 360-o; *GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 300-01 (S.D.N.Y. 2002)).

To prevail on a common law trademark infringement claim in New York, a plaintiff must show that:

(a) The plaintiff has a valid and legally protectable mark; and
(b) There is a likelihood of confusion arising from the defendant's use of a similar mark.

*Horn's, Inc. v. Sanofi Beaute, Inc.*, 963 F. Supp. 318, 328 (S.D.N.Y. 1997).

For the same reasons articulate in Section I, Gordos North is also liable to Plaintiff for common law trademark infringement in connection with his fifth claim for relief.

V.     **Gordos North Has Received a Post-Petition Transfer of Property of the Estate Avoidable under Section 549 of the Bankruptcy Code**

11 U.S.C. § 549 authorizes a trustee in bankruptcy to avoid a transfer of property of the estate that occurs after the commencement of the case that is not otherwise authorized by the Bankruptcy Code or authorized by the Court.

Michael, working in conjunction with his co-defendants effectuated a transfer of the Debtor's interest in the Gordos mark and the good will associated with it immediately following the filing of the Debtor's motion to dismiss, when Elizabeth and Joanne's new venture was incorporated as Gordos North.  Since that date, Gordos North has traded on and built its reputation on the nostalgia associated with the Debtor over nearly 40 years of operations in the same community.

Said transfer was not made in the ordinary course, as the Debtor had ceased it operations shortly before the filing of the motion to dismiss.  Said transfer was not made with the approval of the Court.

Instead, as reflected in the trial testimony, the Schlimans contributed the only assets that had available to the new enterprise involving the Piazzas, namely the Gordos name and the storied history associated with that name.

Accordingly, the transfers of these assets is subject to avoidance and recovery by the Trustee under his ninth claim for relief.

VI.    **Michael Schliman Is Liable for Breach of His Fiduciary Duty, Duty of Loyalty and Waste**

It is settled law that all corporate directors owe a fiduciary duty to a corporation.  This duty is satisfied when a director acts in good faith and with "conscientious fairness, morality and honesty in purpose." *Alpert v. 28 Williams St. Corp.,* 63 N.Y.2d 557, 568-69, 483 N.Y.S.2d 667,

673-74, 473 N.E.2d 19 (1984). Under the N.Y. B.C.L. § 717, a director must perform his duties "in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances." N.Y. B.C.L. § 717(a).

The business judgment rule applies in most instances involving breaches of a fiduciary duty.  In *Geddes v. Anaconda Copper Co.*, the Supreme Court held that directors are presumed to have acted in good faith, and are only required to account for their actions when they are shown to have engaged in self-dealing or fraud, or to have acted in bad faith. *Geddes v. Anaconda Copper Co.*, 254 U.S. 590, 599, 41 S. Ct. 209, 212, 65 L. Ed. 425 (1921). The Court of Appeals, Second Circuit expanded on this principle and opined that "the exercise of fiduciary duties by a corporate board member includes more than avoiding fraud, bad faith and self-dealing." *Hanson Trust PLC v. ML SCM Acquisition, Inc.,* 781 F.2d 264, 274 (2d Cir. 1986)   The Court went on to explain that "directors must exercise their 'honest judgment in the lawful and legitimate furtherance of corporate purposes'." Id (quoting *Auerbach v Bennett*, 419 N.Y.S.2d 619, 629, 393 N.E.2d 994, 419 N.Y.S.2d 920 (1979)).

Further, when a corporate director or officer has an interest in a decision, the business judgment rule does not apply. See, e.g., *Alpert,* 63 N.Y.2d at 568-69 (when merger creates inherent conflict of interest, burden to prove good faith and fairness of merger shifts to interested directors); *Lewis v. S.L. & E., Inc.*, 629 F.2d 764, 769 (2d Cir. 1980).

At this point, the burden shifts to the board/director to demonstrate that its actions were reasonable and/or fair. See, e.g., *Alpert*, 63 N.Y.2d at 568-69; *Geddes,* 254 U.S. at 599. Only if the board/director carries this burden will the transaction be upheld. The initial burden of proving the director's interest or bad faith, however, always rests with the plaintiff.

Second, a director is not afforded protection under the business judgment rule when it involves claims of fraud, self-dealing, unconscionability or other misconduct. *Gillman v Pebble Cove Home Owners Assn.,* 154 A.D.2d 508, 508-509, 546 N.Y.S.2d 134 (2d Dept 1989); see *Auerbach*, 47 N.Y.2d at 629; see also *Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 N.Y.2d 530, 537-38, 553 N.E.2d 1317, 554 N.Y.S.2d 807 (1990); *Sirianni v Rafaloff*, 284 A.D.2d 447, 448, 727 N.Y.S.2d 452 (2d Dept 2001). However, inquiries into claims of fraud and self-dealing are permitted only where a factual basis exists to support such a claim. *Simpson v Berkley Owner's Corp.*, 213 A.D.2d 207, 623 N.Y.S.2d 583 (1st Dept 1995).

Lastly, all forms of waste of assets regardless, of whether they were intentional or negligent are deemed a breach of a fiduciary duty under N.Y. B.C.L. § 717. The primarily is a question of fact for the court. *Shapiro v. Rockville Country Club, Inc.*, 2005 NY Slip Op 7678 (2d Dept 2005); *Aronoff v Albanese*, 85 A.D.2d 3, 5, 446 N.Y.S.2d 368 (2d Dept 1982).

As observed in *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (1989), "it is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect. This is a sensitive and 'inflexible' rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty."

Michael has not asserted the exercise of his business judgment as a defense in his answer. As reflected at trial, Michael exercised no judgment at all and failed to preserve the Debtor's assets for the benefit of the estate and its creditors while in control of the Debtor prior to the conversion of the case. Moreover, business judgment would not protect Michael because the transfer at issue involved self-dealing by virtue of Elizabeth benefitting from the misappropriation of the Gordos mark.

Michael engaged in intentional waste and diversion by allowing and facilitating his wife in forming Gordos North with Joanne and encouraging their exploitation of the Gordos mark.

The Gordos mark and the good will associated with it had value that could have been realized by the estate through a sale.  Rather than approach the Court with a stalking horse bidder to purchase the Gordos mark – which Michael recognized to exist in the share purchase agreement – upon moving to dismiss the Debtor's case the Defendants immediately embarked on a campaign to form Gordos North, lease space nearby, built out that space, and open a new Gordos resurrected from the ashes of the old.

Michael's conduct amounted to a breach of fiduciary duty, breach of loyalty, and corporate water warranting the entry of judgment in favor of the Trustee and against Michael under the Trustee's tenth, twelfth and thirteenth claims for relief.

## VII.    Injunctive Relief

The Lanham Act grants district courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a).

To obtain a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*U.S.S.E.C. v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 296 (2d Cir. 2014) (citation omitted).

In cases of trademark infringement, "proof of a likelihood of confusion establishes both likelihood of success on the merits and irreparable harm." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004).

Having demonstrated not only a likelihood of confusion, but actual confusion, a permanent injunction should be entered enjoining Gordos North from making any use of the Gordos mark in connection with its operations and be required to remove all infringing applications of the Gordos mark, including on its signage, menus, coasters, and advertising.  However, the relief granted to the Trustee should not be limited to injunctive relief for the reasons outlined below.

### VIII.    Assessing Money Damages against the Defendants

As observed by the Supreme Court in *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. __, 140 S. Ct. 1492; 206 L. Ed. 2d 672 (2020)

> A plaintiff in a trademark infringement suit is not required to show that a defendant willfully infringed the plaintiff's trademark as a precondition to a profits award. The Lanham Act provision governing remedies for trademark violations, §1117(a), makes **a showing of willfulness a precondition to a profits award in a suit under §1125(c) for trademark dilution, but §1125(a) has never required such a showing**. Reading words into a statute should be avoided, especially when they are included elsewhere in the very same statute.

A plaintiff may establish willfulness by either actual knowledge of the infringing activity or objective recklessness. *See*, *e.g.*, *Fendi Adele, S.R.L. v. Ashely Reed Trading, Inc.*, 507 Fed. Appx. 26, 31 (2d Cir. 2013); *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 191–92 (1st Cir. 2012).

In assessing profits, a plaintiff is required to prove only the defendant's sales. 15 U.S.C. § 1117(a).  The burden then shifts to the defendant to prove all allowable costs or deductions.  15 U.S.C. §1117(a).

A plaintiff's burden to establish the defendant's sales is not great, and courts allow inferences in the analysis.  *See*, *e.g.*, *Djarum v. Dhanraj Imports, Inc.*, 876 F. Supp. 2d 664, 670 (W.D.N.C. 2012) (finding that plaintiff "met its burden by providing evidence of infringing sales activity and a reasonable estimate of Defendants' gross sales based upon the amount of infringing

goods that were imported by Defendants for sale"); *Rexall Sundown, Inc. v. Perrigo Co.*, 707 F.

Supp. 2d 357, 359 (E.D.N.Y. 2010) (noting that plaintiff must prove sales only, not sales from the

violative conduct).

The defendant does not enjoy the same low bar in proving elements of costs or deductions.

*See*, *e.g.*, *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 176 (3d Cir. 2005) (affirming lower court's

rejection of deductions where defendant broadly summarized expenses without explanation).

If a defendant cannot adequately establish those costs or deductions, then the plaintiff may

be entitled to all gross sales attributable to the infringing product. *See WMS Gaming Inc. v. WPC*

*Prods. Ltd*., 542 F.3d 601, 609 (7th Cir. 2008) (citing as examples *Tex. Tech. v. Spiegelberg*, 461

F. Supp. 2d 510, 526 (N.D. Tex. 2006); *N.Y. Racing Ass'n v. Stroup News Agency Corp.*, 920 F.

Supp. 295, 301 (N.D.N.Y. 1996)).

The Trustee has provided competent evidence of Gordos North's gross profits in the form

of the operating reports generating by Gordos North's point of sale system for the period from

September 1, 2019 through January 31, 2022, the last period for which an operating report was

produced to the Trustee.

As reflected in its operating reports, between September 1, 2019 and January 31, 2022

Gordo's North had gross sales of $2,291,341.77 and sales (net of tax collected and comps) of

$2,057,151.75[4].  See Plaintiff Exhibits "J" and "U".  The operating reports detail the components

of Gordos North's gross sales in each month.  Id.  Accordingly, the Trustee has satisfied the low

bar in proving Gordos North's gross sales by competent evidence.

---

[4] Gordos North continued to operate between February 1, 2022 and the trial date.

The same cannot be said for the Defendants. Elizabeth's conclusory assertion that Gordos North was not profitable does not suffice. The Defendants have not met their burden in proving allowable costs or deductions that could be credited against the gross sales. Presumably, the Defendants may argue that the tax returns included in the record as Defendants' Exhibit "8" satisfies their burden. While the tax returns disclose various categories of expenses and deductions for tax preparation purposes, no contemporaneous detailed proof of the expenses and costs or how they relate to the infringing activities are part of the record.

To prove these deductible costs, a defendant must do more than merely maintain that a list of expenses or costs are attributable to the production of infringing goods or services where the proffered list includes categories of expenses that may well be unrelated to the infringing activity. *See Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582, 586 (5th Cir. 1980); *see also Kamar Int'l, Inc. v. Russ Berrie & Co., Inc.*, 752 F.2d 1326, 1331–33 (9th Cir. 1984) (examining the varying methods courts use to allocate deductions for overhead expenses before concluding that defendant must *prove* that each category of overhead actually contributed to "the production, distribution[,] or sales of the infringing goods"). While the tax returns might summarize expenses and costs relating to the operation of Gordos North, if credited by the Court, the Defendants have failed to prove that each category of expense and cost actually contributed to the exploitation of the Debtor's assets.

Having failed to meet their burden, the Trustee is entitled to an award equivalent to Gordos North's gross profits from inception through today.

To the Court determines, in its discretion, that such a sum could be excessive, at the same time it should be skeptical of the Defendants' assertions that Gordos North was not profitable.

The Court has heard testimony that John funded the startup of Gordos North and did so without observing any of the formalities a lender would ordinarily employ to memorialize a loan. There were no construction contracts or promissory notes. No rate of interest had been agreed upon. There was no maturity date. John did not secure his position as against the assets of Gordos North either. The foregoing evidences that what John really did was provide paid-in capital to Gordos North on behalf of his wife, which it elected to book as a loan payable to Piazza Brothers.

According to statements to the Gordos North federal tax returns for the tax year ended September 30, 2021, as of October 1, 2020 Gordos North had a loan payable to Piazza Brothers in the sum of $422,055. See Defendants' Exhibit "8" (providing detail to Schedule L, Line 20 of the federal tax return for the period ended September 30, 2021).

As of September 30, 2021, the loan payable due Piazza Brothers had been paid down by $400,000 and had a remaining balance of $22,055. Id. This amount represents approximately 20% of the gross sales between the date Gordos North opened its doors and January 31, 2021.

This pay down was only possible because Gordos North had $400,000 available with which to significantly paydown the alleged loans made by an insider or return the paid-in capital. Had Gordos North's financial condition been as precarious as the Defendants would have the Court believe, it would have been impossible for it to return those funds to Piazza Brothers.

Consequently, the Trustee believes that the measure of damages is no less than $400,000, but as much as the entirety of Gordos North's gross profits.

Section 1117(a) allows the court to award attorneys' fees to the prevailing party, but only in exceptional cases. Historically, cases determined to be exceptional involved willful, deliberate, fraudulent, or malicious acts of infringement.88 See, e.g., Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1216 (9th Cir. 2003) ("[A] case is exceptional within the meaning of 15

U.S.C. §1117(a) where the infringement is willful, deliberate, knowing or malicious."); *Tamko Roofing Products, Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 31 (1st Cir. 2002)("In exceptional cases, attorneys' fees may be appropriate in circumstances where the acts of infringement were '"malicious," "fraudulent," "deliberate," or 'willful.'"') (quoting S. Rep. 93-1400, at 5 (1974)); *United Phosphorus Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219, 1232 (10th Cir. 2000) (an "exceptional case" occurs when "a trademark infringement is malicious, fraudulent, deliberate, or willful" and awarding attorneys' fees where defendant deliberately relabeled an inferior product with plaintiff's mark after repeated warnings to stop).

This is one such exceptional case where such relief is warranted as the conduct of Gordos North and Michael was deliberate, willful and calculated to allow Gordos North to trade on the Debtor's reputation for the benefit of Elizabeth and Joanne to the detriment of the Debtor's estate.

The Lanham Act entitles a plaintiff to recover "the costs of the action" for a violation of § 1125(A) of the statute. 15 U.S.C. § 1117(a). Court have interpreted "costs of the action" to mean those expenses enumerated in 28 U.S.C. § 1920. *See, e.g., Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1026 (S.D.N.Y. 1994) ("Section 35 of the Lanham Act, 15 U.S.C. § 1117, specifically provides for the assessment of costs as part of the damages calculation. Costs of the action, as defined by 28 U.S.C. § 1920, shall therefore be taxed against defendant pursuant to § 35 of the Lanham Act, and Fed. R. Civ. P. 54(d).").

Alternatively, if the Court determines that the amount of the recovery based on profits is either inadequate or excessive, it may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

Section 1117(b) requires courts to treble profits or damages and award attorney's fees when a defendant engages in certain acts *intentionally* and with specified *knowledge*. Section 1117(c) increases the cap on statutory damages from $200,000 to $2,000,000 for certain *willful* violations. *Romag Fasteners, Inc.*, supra.

Statutory damages for the non-willful infringement of registered trademarks are available from $1,000 to $200,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In cases of willful infringement, a plaintiff may recover enhanced statutory damages of "not more than $2,000,000" per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(2). *See Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, No. 08-cv-68, 2010 WL 2133937, at *10 (E.D.N.Y. Mar. 11, 2010) ("Statutory damages awards are intended to be both compensatory and punitive.").

To prove willfulness, a plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard or willful blindness. *See Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005). "[K]nowledge may be actual or constructive. In other words, it need not be proven directly but may be inferred from the defendant's conduct." *N.A.S. Import, Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (internal citation omitted). "Reckless disregard for the possibility of infringement may be found when the infringer should have known - for instance, by virtue of his occupation - that the particular acts would constitute infringement." *U.S. Media Corp., Inc. v. Edde Entm't, Inc.*, No. 94-cv-4849, 1996 WL 520901, at *7 (S.D.N.Y. Sept. 12, 1996). In the trademark infringement context, "willful blindness means that a defendant knew it might be selling infringing goods but nevertheless intentionally shielded itself from discovering the truth." *Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 31 (2d Cir. 2013) (internal quotation marks omitted).

24

As reflected in the trial record, the Defendants were aware that they were engaged in infringing activities and that their use of the Gordos mark to launch Gordos North was both deliberate and willful.  The Defendants were neither ignorant nor blind as to what they were doing, as evidenced by the timing of the formation of Gordos North on the heels of the filing of the Debtor's motion to dismiss, and the premeditated efforts to market Gordos North as the successor the Debtor.

Accordingly, the Court also has at its disposal statutory damages for non-willful infringement and enhance statutory damages, which the Trustee believes to be applicable here.

## CONCLUSION

Based on the evidence presented at trial, the arguments made on summation, and the briefing contained herein, the Trustee should be awarded an injunction prohibiting Gordos North from any further use of the Gordos mark and an award of money damages, attorney's fees and costs as against the Defendants arising from their misappropriation of the Gordos mark and the goodwill associated with it.

Dated: Wantagh, New York
      May 2, 2022

                **LAMONICA HERBST & MANISCALCO, LLP**
                Attorneys for Plaintiff

    By:    ***s/David A. Blansky***
              David A. Blansky, Esq.
              3305 Jerusalem Avenue, Suite 201
              Wantagh, New York 11793
              (516) 826-6500